**In re GRAND JURY PROCEEDING.**

**UNITED STATES, Petitioner, Appellee,**

**v.**

**John DOE, Respondent, Appellant.**

**No. 93–2316.**

United States Court of Appeals,
First Circuit.

Submitted Dec. 22, 1993.

Decided Jan. 10, 1994.

Peter B. Krupp, Boston, MA, on brief, for respondent, appellant.

Donald K. Stern, U.S. Atty., and Fred M. Wyshak, Jr., Asst. U.S. Atty., Boston, MA, on brief, for appellee.

Before BREYER, Chief Judge, CYR and STAHL, Circuit Judges.

PER CURIAM.

Respondent John Doe has refused to testify before a grand jury investigating alleged organized crime figures, explaining that he was fearful of reprisals against himself and his family and was opposed on principle to providing evidence against others. The district court held respondent in civil contempt and ordered him incarcerated. It found that his proffered explanations failed to provide "just cause" for his recalcitrance, *see* 28 U.S.C. § 1826(a), and that incarceration was reasonably likely to induce a change of heart. On appeal, respondent now challenges this determination on procedural grounds: he alleges that the district court abridged his right to a meaningful evidentiary hearing by restricting his ability to present live testimony. We disagree and therefore affirm.

## I.

In September 1993, in response to a subpoena from the grand jury, respondent indicated that he would refuse to testify. His reasons apparently included a desire not to incriminate himself, for the government thereafter obtained a court order granting him immunity and ordering him to testify. On November 18, respondent was again called before the grand jury. Despite the court order, and despite a government offer to place him in the federal witness protection program, respondent reiterated his refusal to testify. The government thereupon filed the instant petition for contempt.

The district court held three hearings on the matter during the first week of December. Respondent there sought to establish that there was no realistic possibility that he would ever testify, such that his incarceration would be punitive rather than coercive and thus violative of due process. Respondent himself took the stand and so stated, reaffirming that he was fearful of reprisals and that testifying was not "the right thing to do." This testimony came in response to queries from the court; respondent's counsel declined an invitation to conduct further examination. Beyond this, respondent sought permission to secure testimony from the following four individuals, for the reasons indicated:

(1) A witness who had earlier appeared before the grand jury and had since entered the witness protection program. It was proffered that this witness was the source of the government's information about respondent and so could testify as to the need for his testimony, as well as to the dangers posed by the targets of the investigation;

(2) A state trooper, present under subpoena, who likewise could document such dangers;

(3) Another trooper, also under subpoena, who could testify that respondent, following his arrest for a drug offense in 1990, rejected a government offer of leniency in exchange for his cooperation; and

(4) Respondent's sister, who could explain respondent's unwillingness ever to jeopardize the safety of his family.

The district court declined to hear such testimony, at least in the first instance. Instead, it directed respondent to submit appropriate affidavits (where feasible) or offers of proof, indicating that it would reconsider the need for live testimony upon review of such submissions. Respondent accordingly filed four affidavits from friends and relatives opining that he would never testify, one from his former attorney describing the events

surrounding his 1990 arrest, and one from his current attorney attesting to the dangerousness of the grand jury targets as depicted in newspaper accounts. The court subsequently concluded that such procedures were sufficient both to satisfy the dictates of due process and to provide a suitable basis for decision. Based on respondent's testimony and the sundry written submissions, it found a reasonable likelihood that incarceration would eventually succeed in coercing his testimony. Respondent was therefore ordered confined for a period of eighteen months, until the expiration of the grand jury's term, or until he purged himself of contempt—whichever occurred first. Respondent now contends that, by limiting the scope of the evidentiary presentation, the court deprived him of a meaningful opportunity to explain the gravity and sincerity of his fears of reprisal, in violation of due process. We review the decision below for abuse of discretion. *See, e.g., In re Grand Jury Proceedings (Doe)*, 943 F.2d 132, 136 (1st Cir.1991) (per curiam).

## II.

Respondent's desire to document the nature and scope of his fears was not necessarily inappropriate to the proceedings below. Of course, it has been widely held that a witness' fear of reprisal against himself or his family does not constitute just cause for refusing to testify. *See, e.g., Piemonte v. United States*, 367 U.S. 556, 559 n. 2, 81 S.Ct. 1720, 1722 n. 2, 6 L.Ed.2d 1028 (1961) (dicta); *Doe*, 943 F.2d at 135 (listing cases); *In re Farrell*, 611 F.2d 923, 924–25 (1st Cir.1979).[1] Yet a civil contemnor's incarceration can be transformed from the permissibly coercive into the improperly punitive where "there is no realistic possibility that he will comply with the order to testify." *In re Grand Jury*, 851 F.2d 499, 502 (1st Cir.1988) (per curiam); *accord, e.g., Simkin v. United States*, 715 F.2d 34, 37 (2d Cir.1983). And some courts have indicated that fear of reprisal can be relevant, under certain circum-

stances, to the determination of whether any such possibility exists. *See, e.g., In re Grand Jury Proceedings Empanelled May 1988 (Freligh I)*, 894 F.2d 881, 883–85 (7th Cir. 1989) (duress, demonstrated by reference to palpable, imminent danger, might constitute equitable defense to civil contempt); *In re Grand Jury Proceedings (Doe)*, 862 F.2d 430, 432 (2d Cir.1988) (per curiam) (fear of reprisal is one factor to be considered in determining whether "confinement will produce the desired effect"); *In re Grand Jury Proceedings (Gravel)*, 605 F.2d 750, 752 (5th Cir.1979) (per curiam) (fear of reprisal is "legitimate factor in mitigation").

■ We need not further explore the applicability of any such "duress" defense, however, for it is apparent that respondent was afforded ample opportunity to adduce evidence with respect thereto. We have noted that, where a civil contemnor is faced with incarceration, "due process has been considered by many courts to require an 'uninhibited adversary hearing' where the witness can 'probe all nonfrivolous defenses to the contempt charge.'" *In re Grand Jury Proceedings (Campaigner Publications, Inc.)*, 795 F.2d 226, 234 (1st Cir.1986), *cert. denied*, 479 U.S. 1064, 107 S.Ct. 950, 93 L.Ed.2d 999 (1987) (quoting *United States v. Alter*, 482 F.2d 1016, 1024 (9th Cir.1973)). Yet this requirement is subject to reasonable limitations, depending on the circumstances involved. *See, e.g., In re Bianchi*, 542 F.2d 98, 101 (1st Cir.1976) ("While a witness must be given a meaningful opportunity to present his defense ..., this summary procedure does not require meaningless formalities that would only serve to delay the proceedings."). Where there is no genuine factual dispute, or where proposed third-party testimony will likely be repetitive or of marginal relevance, a court may properly call for offers of proof or otherwise restrict the ability to call witnesses. *See, e.g., In re Grand Jury Matter (Backiel)*, 906 F.2d 78, 85–86 (3d Cir.), *cert. denied*, 498 U.S. 980, 111 S.Ct. 509, 112

---

1. As the Ninth Circuit has explained:

Were it otherwise, any person involved with a criminal enterprise could point to the possible danger that comes from giving testimony. The more vicious or sophisticated the enterprise,

the greater the danger. Thus, grand juries would be deprived of information when they most needed it.

*In re Grand Jury Proceedings (Lahey)*, 914 F.2d 1372, 1375 (9th Cir.1990).

L.Ed.2d 521 (1990); *Campaigner Publications, Inc.*, 795 F.2d at 235; *In re Kitchen*, 706 F.2d 1266, 1273 (2d Cir.1983). The court's discretion in this regard is "very broad." *Id.*

Far from constituting an abuse of discretion, the procedure followed by the district court here was abundantly fair.[2] At the first hearing, the court granted respondent's request for a continuance to permit further preparation. At the second, respondent was permitted to testify without limitation. We note that, to the extent the nature and scope of his fears of reprisal were not fully elucidated, such failure is largely attributable to the fact that respondent's counsel declined the invitation to conduct further examination. Thereafter, respondent was afforded time to submit affidavits from, or offers of proof regarding, the proposed third-party witnesses and others.

Respondent's principal contention—that the court erred in preventing such witnesses from taking the stand—fails for several reasons. First, the testimony of relatives concerning respondent's refusal to jeopardize the safety of his family would have been cumulative—and was, in any event, adequately proffered by way of affidavit. Second, the events surrounding respondent's 1990 arrest were likewise described in an affidavit. Respondent could have elaborated thereon in his own testimony but did not. We are left to speculate what could have been added by the testimony of the arresting officer.[3]

Third, any evidence regarding the necessity for respondent's testimony before the grand jury would have been irrelevant. There is no requirement that the government show either "that the information it hopes to obtain from Doe is significant [or] that that information is unavailable from other sources." *Doe*, 862 F.2d at 431; *accord, e.g., Backiel*, 906 F.2d at 87–88 (grand jury "is free to pursue cumulative leads"); *In re Grand Jury*, 851 F.2d at 502 (same).

Finally, prospective testimony as to the danger posed by the targets of the investigation would have been both cumulative and of minimal relevance. The court accepted as an offer of proof counsel's affidavit and various newspaper articles exploring this issue at length. The government effectively conceded the matter, and the court expressed a readiness to assume it to be true. Yet all this proves to have been largely beside the point in any event, for two reasons. To have any relevance at all in this context, fear of reprisal must be based on more than simply vague, unsubstantiated apprehension. Rather, as the Seventh Circuit has held, such fear must be "genuine" and "reasonable," as demonstrated by reference to "palpable imminent danger." *Freligh I*, 894 F.2d at 883; *see also In re Grand Jury Proceedings of December 1989 (Freligh II)*, 903 F.2d 1167, 1170 (7th Cir.1990) ("overwhelming sense of immediate danger"). Respondent's complaints in this regard are of the former sort. In addition, he has rejected the government's offer to

---

**2.** In the related context where contemnors have sought *release* from custody on the ground that incarceration had lost its coercive effect, the Second Circuit has upheld orders reached on the basis of far more abbreviated proceedings. *See Sanchez v. United States*, 725 F.2d 29, 32 (2d Cir.1984) (based on witness' affidavit and oral argument); *Simkin v. United States*, 715 F.2d at 38 & n. 2 (based on witness' affidavit only). Indeed, the court went so far as to say that "a district judge has virtually unreviewable discretion both as to the procedures he will use to reach his conclusion, and as to the merits of his conclusion." *Id.* at 38 (footnote omitted). *See also In re Crededio*, 759 F.2d 589, 591–92 (7th Cir.1985).

**3.** To the extent such evidence was intended to buttress his assertion that he would never testify against others as a matter of principle, it was of marginal relevance. *See, e.g., Backiel*, 906 F.2d

at 88 ("moral beliefs" do not alter duty to testify); *In re Crededio*, 759 F.2d 589, 593 n. 2 (7th Cir.1985) (same). *Compare In re Parrish*, 782 F.2d 325 (2d Cir.1986) (affirming decision to release contemnor after seven months' confinement due to lack of coercive effect; witness had claimed that to answer grand jury questions would be betrayal of "black liberation movement").

We also note that respondent's disinclination to turn against his drug confederates in public fashion in 1990 has scant bearing on what actions he might take within the private confines of the grand jury. There has been no suggestion here that the secrecy of the grand jury has been jeopardized. *Compare In re Grand Jury Proceedings (Mallory)*, 797 F.2d 906 (10th Cir.1986) (affirming denial of contempt petition where witness was thought to be in real danger due to breach of grand jury secrecy).

enroll him in the witness protection program. As we recently observed: " 'The witness may not frustrate the grand jury's access to the information on the basis that he will be put in danger by giving it, and, at the same time, reject an offer to remove or minimize the danger.' " *Doe*, 943 F.2d at 135 (quoting *Gravel*, 605 F.2d at 752–53); *accord, e.g., In re Grand Jury Proceedings (Burns)*, 652 F.2d 413, 414 (5th Cir.1981) (noting that disruption inherent in relocation must yield to powerful societal interest in ensuring that grand juries have access to relevant information). *Compare Freligh I*, 894 F.2d at 883 (remanding for further proceedings where witness was given "no opportunity to demonstrate that he or his family was in danger" and "no offer of protection").[4]

### III.

■ Finally, we find no error in the substance of the district court's finding that incarceration will have a realistic possibility of causing respondent to testify. As respondent has not challenged this finding directly, we note only the following. The determination to be made by the district court in this regard "is far removed from traditional fact-finding"—the court "is obliged to look into the future and gauge, not what will happen, but the *prospect* that something will happen." *In re Parrish*, 782 F.2d 325, 327 (2d Cir. 1986) (emphasis in original). "Even if the judge concludes that it is the contemnor's present intention never to testify, that conclusion does not preclude the possibility that continued confinement will cause the witness to change his mind." *Simkin v. United States*, 715 F.2d at 37. Given the "speculative" nature of such inquiry, *United States v. Jones*, 880 F.2d 987, 989 (7th Cir.1989), the district court enjoys wide latitude in gauging whether incarceration will be (or will remain) coercive. *See, e.g., Simkin v. United States*, 715 F.2d at 38 ("virtually unreviewable discretion").

The court here conducted a careful evaluation of the individual circumstances pertaining to respondent. It properly discounted the claim that respondent (having recently completed a three-year term on the drug offense) was sufficiently familiar with prison life as to render further incarceration noncoercive. Unlike earlier, respondent now carries "the keys of [the] prison in [his] own pocket." *Hicks v. Feiock*, 485 U.S. 624, 633, 108 S.Ct. 1423, 1430, 99 L.Ed.2d 721 (1988) (internal quotation omitted). It properly determined that his family ties might eventually induce a change of heart. And it was justified in concluding that his present resolve never to testify might soften over time. *See, e.g., Freligh I*, 894 F.2d at 883 ("faced with protracted incarceration [the contemnor] is quite likely to reduce his estimate of the gravity of the threat [of reprisal]").

*Affirmed.*

---

4. In *In re Grand Jury Proceedings (Doe)*, 790 F.Supp. 422 (E.D.N.Y.1992), on which respondent relies, the court noted that all of the choices faced by the witness—incarceration, endangering his life, or changing it radically through relocation—were unpalatable. As a result, prior to issuing a contempt citation, the court required that the grand jury be informed of the reasons for the witness' recalcitrance and that it then make an explicit request that he be incarcerated. *Id.* at 427. Respondent can derive no comfort from this decision. The fact that one court chooses, in the exercise of discretion, to adopt such safeguards does not mean that another court's failure to do so constitutes an abuse of discretion.