27 F.3d 554
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
IN RE GRAND JURY PROCEEDINGS
UNITED STATES, Petitioner,
v.
John DOE, Appellant, Respondent.
 No. 94-1560
 United States Court of Appeals,
First Circuit.
 June 17, 1994
 
 Appeal from the United States District Court for the District of Massachusetts [Hon. Mark L. Wolf, U.S. District Judge ]
 Brian J. McMenimen and Burke & McMenimen on brief for appellant.
 D.Mass.
 AFFIRMED.
 Before Torruella, Cyr and Boudin, Circuit Judges.
 Per Curiam.
 
 
 1
 Respondent John Doe appeals a district court order holding him in civil contempt for refusing to comply, without just cause, with a court order directing him to testify before a grand jury. 28 U.S.C. Sec. 1826. We affirm.
 
 
 2
 Respondent was subpoenaed to appear before a grand jury on April 26, 1994. Relying on his fifth amendment right, respondent refused to answer questions on that day. After the government obtained a court order granting him immunity and ordering him to testify, respondent again appeared before the grand jury on May 10 and again refused to answer any questions put to him. The government filed a petition for contempt the next day.
 
 
 3
 On May 13 and May 19, 1994, the district court held a hearing on the government's petition. Respondent testified that his refusal to answer the grand jury's questions was based on his fear for his own safety and that of his family. He further testified that he would never answer questions from a grand jury on this matter. Doe's wife testified that she too feared for her life and that of her children if Doe were to testify, and that, in her opinion, he would never change his mind in this matter. Both Doe and his wife testified, that although they are separated, Doe remains very close to his children.
 
 
 4
 At the conclusion of the hearing, the district court found that Doe had refused to obey the court order directing him to testify. The court also found that his refusal was based on a "genuine and reasonable fear of harm to himself and/or to his family" and that it was Doe's present intention not to testify. Nevertheless, the court found that there was a realistic possibility that Doe would change his mind either because of his desire to see his children or because evolution of events might diminish his fear of retribution. The court, therefore, entered the order for civil contempt.
 
 
 5
 "Confinement under Section 1826 is coercive, not punitive, and its sole purpose is to compel the contemnor to provide the requested testimony." In re Grand Jury Proceedings, 862 F.2d 430, 432 (2d Cir. 1988). "[A] civil contemnor's incarceration can be transformed from the permissibly coercive into the improperly punitive where 'there is no realistic possibility that he will comply with the order to testify.' " United States v. Doe ( In re Grand Jury Proceeding ), 13 F.3d 459, 461 (1st Cir. 1994) (quoting In re Grand Jury, 851 F.2d 499, 502 (1st Cir. 1988)). However, given the "speculative nature" of this inquiry, "the district court enjoys wide latitude in gauging whether incarceration will be (or will remain) coercive." Id. at 463 (citations omitted). We review only for abuse of discretion. In re Grand Jury Proceedings, 943 F.2d 132, 136 (1st Cir. 1991).
 
 
 6
 Respondent claims that the district court abused its discretion because its findings that he has a reasonable fear of reprisal and that he has affection for his children make it unreasonable to conclude that he will ever change his present intention not to testify. He also contends that there is no support for the court's finding that the situation may change in such a way as to diminish his fear.
 
 
 7
 While a reasonable fear of reprisal may be relevant to the determination of whether there is a realistic possibility that coercion will lead to compliance with the order to testify, Doe, 13 F.3d at 461, fear of reprisal against himself or his family does not constitute just cause for a respondent to refuse to testify, In re Grand Jury, 943 F.2d at 135 (citing cases). Were the rule otherwise, the grand jury would be deprived of information against the most vicious and sophisticated criminal enterprises. Id. Moreover, a finding that a contemnor has no present intent to testify does not preclude the possibility that continued confinement will cause the witness to change his mind. Doe, 13 F.3d at 463. Finally, the finding that the situation may change so as to diminish respondent's fear of retaliation, while speculative, does have support in the record.
 
 
 8
 The determination of whether the possibility exists that incarceration will coerce a contemnor to testify requires the court to "look into the future and gauge, not what will happen, but the prospect that something will happen." Id. (quoting In re Parrish, 782 F.2d 325, 327 (2d Cir. 1986)) (emphasis in original). In the instant case, the court undertook a careful evaluation of the individual circumstances relating to respondent. It then made an informed speculation as to the future. While the case may be a close one and we agree that the appeal is not frivolous, the district court was well within its discretion in determining that there was a realistic possibility that incarceration would lead the contemnor to change his mind. See id. at 463 (assuming that respondent had reasonable fear, court nonetheless properly determined that "family ties might eventually induce a change of heart").
 
 
 9
 In the present case, the district court's judgment that family ties might persuade respondent to cooperate is a judgment call, but it is not illogical; and the district judge, having heard the evidence, is due considerable deference in his evaluation of the circumstances. We are not sure that the district court's second ground, comprising a brief reference to "the evolution of events", is sufficiently explained; and if this were the only basis for the order, we might ask for further explanation. Here, however, the family ties ground was given first, was concretely explained, and has as much basis in the record as such a prophecy is ever likely to have. At this stage, we do not think that any purpose would be served by asking the district court to elaborate its second ground.
 
 
 10
 In the alternative, respondent asks that we remand this case to the district court for a hearing on what steps the government can take to protect him and his family. It does not appear that any such request was made to the district court; indeed, Doe's counsel said at the hearing that he "very much doubted" that an offer of protection would affect his client's refusal to testify. If during incarceration respondent decides that the provision of protection by the government would affect his refusal to testify, there is nothing to prevent the issue from being raised in the district court at that time.
 
 
 11
 Affirmed.