*Travis Howell v. State of Maryland,* No. 459, Sept. Term 2017.  Opinion filed on June 27, 2018, by Berger, J.


CRIMINAL LAW - DURESS DEFENSE

In order for duress to constitute a defense to the commission of an illegal act, the duress by another person on the defendant must be present, imminent, and impending, and of such a nature as to induce well grounded apprehension of death or serious bodily injury if the act is not done.

CRIMINAL LAW - DURESS DEFENSE TO THE COMMISSION OF CONTEMPT

Fear does not generally excuse a recalcitrant witness's refusal to testify, but Maryland law provides that duress is a defense as to all crimes except taking the life of an innocent person. Assuming arguendo that duress can be a valid defense to the commission of the offense of contempt, the duress defense was not generated when, while waiting in the courthouse hallway prior to being called to testify, a witness was threatened by five or six individuals and told "you got to come out on the street sometime."  By the time the witness refused to testify, the threatening individuals had been removed from the courthouse and there was no imminent or impending threat.  For these reasons, the witness was not entitled to raise the defense of duress.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 459

September Term, 2017

_____

TRAVIS HOWELL

v.

STATE OF MARYLAND

_____

Wright,
Berger,
Leahy,

JJ.

_____

Opinion by Berger, J.

_____

Filed: June 27, 2018

Travis Howell ("Howell"), appellant, was convicted of one count of criminal contempt pursuant to a not guilty agreed statement of facts. The basis for the finding of contempt was Howell's refusal to testify in a criminal trial after having been granted use and derivative use immunity pursuant to Md. Code (2006, 2013 Repl. Vol.), § 9-123 of the Courts and Judicial Proceedings Article ("CJP").

On appeal to this Court, Howell presents a single issue for our consideration, which we have rephrased slightly as follows:

> Whether the circuit court erred when it determined that the defense of duress was unavailable to Howell's charge of criminal contempt premised upon a refusal to testify.

For the reasons explained herein, we shall affirm the judgment of the circuit court.

## FACTUAL BACKGROUND

In reciting the facts of this case, we follow the agreed statement of facts that formed the basis of Howell's conviction, which we supplement with excerpts from the record as appropriate.

On October 2, 2012, Howell appeared before a grand jury in the Circuit Court for Baltimore City to testify against Freddie Curry ("Curry"). According to Howell's testimony, Curry told Howell that he murdered Raynard Benjamin ("Benjamin") in January of 2011. The motive for the murder was retaliation for Benjamin's participation in the

kidnapping of Curry's girlfriend.[1] Curry was subsequently charged with the murder of Benjamin.[2]

On February 24, 2016, Howell was picked up on a warrant as a material witness in the Curry trial. Howell was released on electronic monitoring after he promised to appear in court on his own volition.

On March 7, 2016, Howell appeared in court for the Curry trial, with the Honorable Pamela J. White presiding. When Howell was called to the stand, he invoked his Fifth Amendment privilege in response to every question posed to him. The State moved for an order compelling Howell to testify pursuant to CJP § 9-123.[3] Judge White signed an order granting Howell use and derivative use immunity and ordering Howell to testify. Howell was ordered to return to court on March 10, 2016.

On March 8, 2016, Howell's attorney telephoned the Assistant State's Attorney and asked if the State could offer any form of witness protection to Howell. The prosecutor

---

[1] At the time Howell was called to testify, Howell was awaiting sentencing in the case of *United States v. Travis Howell*, Case No. RDB-11-0561 in the U.S. District Court for the District of Maryland. Pursuant to a plea agreement, Howell had agreed to cooperate with the government and to testify truthfully in any cases in which he was called as a prosecution witness.

[2] The case was captioned as *State of Maryland v. Freddie Curry*, Case No. 114353012 in the Circuit Court for Baltimore City.

[3] CJP § 9-123 provides that a court may order a witness to testify in a criminal proceeding notwithstanding the witness's invocation of the Fifth Amendment, provided that the witness is granted use and derivative use immunity.

responded that the State could offer Howell only temporary relocation services from his residence to a hotel.

On March 9, 2016 at 9:28 P.M., the *Baltimore Sun* published an article about the Curry trial on its website. The article disclosed Howell's identity and role in the case:

> Another key witness in the case, prosecutors said, is a longtime friend of Curry named Travis Howell. Howell made a plea agreement with the federal government in a drug case and agreed to testify that Curry told him about killing Benjamin.

The article appeared with greater detail in the print edition of the *Baltimore Sun* that came out the following morning.

On March 10, 2016, Howell arrived at the courthouse and waited outside the courtroom to be called to testify. According to Howell, while he was waiting in the corridor, he was verbally accosted and physically assaulted by five or six unidentified men, who threatened him with violence for snitching. Courthouse security intervened and ejected the men from the courthouse. As the men were leaving, one of them told Howell that "you got to come out on the street sometime." The men were not detained or arrested. Within five minutes of the altercation, Howell was called to the stand.[4]

The State proceeded with direct examination, but Howell answered every question by saying, "I respectfully refuse to testify." The following excerpt from the transcript is illustrative:

---

[4] In the agreed statement of facts, the State acknowledged that Howell and other defense witnesses would testify about the altercation outside the courtroom, but the State did not agree to the accuracy or credibility of that testimony.

3

> [THE STATE]: What kind of shoes are you wearing this afternoon?
>
> [HOWELL]: I respectfully refuse to testify.
>
> [THE STATE]: Mr. Howell, I'm just asking you about your shoes. What kind of shoes are you wearing?
>
> [HOWELL]: I respectfully refuse to testify.
>
> [THE STATE]: Mr. Howell, are you being directed to answer in that way by your attorney?
>
> [HOWELL]: I respectfully refuse to testify.
>
> [THE STATE]: Mr. Howell, on March 7th, I believe, 201[6], in this courtroom, you were granted an immunity for use and derivative use. Are you familiar with that granting of your immunity?
>
> [HOWELL]: I respectfully refuse to testify.

Judge White then ordered Howell to answer the State's questions. The State resumed its examination, but Howell continued to respond to every question in the same fashion:

> [THE STATE]: Mr. Howell, do you understand that if you refuse to answer any questions propounded by either the State or defense that you can be held in contempt?
>
> [HOWELL]: I respectfully refuse to testify.
>
> [THE STATE]: Sir, do you understand that if you are held in contempt that this Court could find you in contempt and could sentence you to a period on direct contempt of up to six months incarceration? Do you understand that, sir?
>
> [HOWELL]: I respectfully refuse to testify.

After further questioning along these lines, Judge White held Howell in direct contempt of court:

THE COURT: All right, I am going to hold you in direct contempt of this court on two accounts and will address the contemptuous behavior []consistent with the Courts & Judicial Proceedings Article, § 9-204[5] in anticipation of the State's motion for sanctions for your refusal to comply with the use and immunity order. First, pursuant to Rule 15-203, I do find that you have acted contemptuously of this Court.[6] I have heard for myself, I have directly perceived the conduct by yourself constituting the contempt, and the contempt has interrupted the orderly process of the current proceedings, namely the case of State v. Freddie Curry, and interfered with the dignified conduct of the Court's business.

I am going to afford you an opportunity as early as possible, and I will set it in for a time to be determined tomorrow. I will afford you an opportunity consistent with the circumstances to present exculpatory or mitigating information. And I will undertake at that time to confirm, after

---

[5] It appears as if the court intended to reference CJP § 9-123, which addresses the privilege against self-incrimination. CJP § 9-204 addresses the discharge of a witness from execution, providing that "[t]he court that issued an execution on a forfeited recognizance for a witness who failed to appear may discharge the witness from execution upon motion showing good and sufficient cause for the failure."

[6] Maryland Rule 15-203(a) provides the following:

The court against which a direct civil or criminal contempt has been committed may impose sanctions on the person who committed it summarily if (1) the presiding judge has personally seen, heard, or otherwise directly perceived the conduct constituting the contempt and has personal knowledge of the identity of the person committing it, and (2) the contempt has interrupted the order of the court and interfered with the dignified conduct of the court's business. The court shall afford the alleged contemnor an opportunity, consistent with the circumstances then existing, to present exculpatory or mitigating information. If the court summarily finds and announces on the record that direct contempt has been committed, the court may defer imposition of sanctions until the conclusion of the proceeding during which the contempt was committed.

5

hearing exculpatory or mitigating information, that direct contempt has been committed in my presence. I will also expect to defer imposition of sanctions for the direct contempt of this Court until, at least until tomorrow, if not the conclusion of the trial proceedings that are currently under way.

In addition, with reference to § 9-204 of the Courts & Judicial Proceedings Article, specifically subsection (b), I have ordered you to testify consistent with the order that I signed on March the 7th, and you have nevertheless refused to testify or to provide other information in this criminal prosecution. Consistent with my order you have no latitude, you may not refuse to comply with my order on the basis of the privilege against self-incrimination let alone a blanket refusal to testify.

You have no basis under the law and you have cited no constitutional allowance to refrain from testifying in this case and to refuse to comply with my order granting you use and derivative use immunity. Accordingly, given your refusal to comply with my order, I will await the written motion of [the prosecutor], and I will expect to address the transcript of these proceedings and undertake further proceedings to determine, consistent with the statutory requirements, a finding of direct contempt and also consistent with Title 15 and the direct contempt rule that I earlier cited 203, 15-203.

Anything that you want to second guess yourself about now, Mr. Howell? Any questions for the Court.

[HOWELL]: I respectfully refuse to testify.

THE COURT: All right, you may take him.

Judge White vacated Howell's electronic home monitoring and ordered a hearing, pursuant to Maryland Rule 15-203(a), to determine whether direct criminal contempt had been committed and, if so, whether sanctions were warranted.

That evening, Howell was taken to Baltimore City's Central Booking and Intake Facility ("CBIF"). According to Howell, he was almost immediately surrounded by a

6

hostile group of detainees, some of whom called him a snitch and threatened him with violence. When Howell explained that he was at CBIF because he had refused to testify against Curry, the hostile detainees dispersed.

## PROCEDURAL BACKGROUND

*Contempt Proceedings Before Judge White*

On March 11, 2016, Judge White held a hearing to determine whether Howell had committed criminal contempt. Before proceeding, Judge White called Howell to the stand and gave him one more chance to testify. Once again, Howell responded to every question by saying, "I respectfully refuse to testify." The court then proceeded with the contempt hearing. Howell testified that five or six men had approached and threatened him in the courthouse on March 10, 2016 and that he was frightened about the consequences of testifying in the Curry trial. Howell also testified that when he initially made his proffer of testimony, the prosecutor promised that his name would not be disclosed without advanced warning. Howell's counsel informed the court about the *Baltimore Sun* article naming Howell as a witness, as well as the prosecutor's assertion that the State could only provide temporary relocation for Howell.

Judge White ruled that Howell, in refusing to testify on March 10 and 11, 2016, had twice committed direct contempt. Judge White ordered that Howell be held for sentencing on March 18, 2016, after the conclusion of the Curry trial. The State announced its intention to seek an indictment against Howell for his refusal to comply with a lawful order

of the court. In response, Howell demanded a jury trial. After the hearing, Howell was returned to CBIF.

According to Howell, on March 13, 2016 he was physically attacked in CBIF by a fellow detainee who called him a snitch immediately prior to and during the assault.[7]

*Indictment*

Howell was indicted by a grand jury on two counts of common law direct criminal contempt. Count One charged Howell with common law direct criminal contempt for his refusal to testify on March 10, 2016. Count Two charged Howell with common law direct criminal contempt for his refusal to testify on March 11, 2016. Thereafter, Judge White issued an order pursuant to Maryland Rule 15-204[8] establishing that the contempt charges against Howell would proceed under Maryland Rule 15-205 and 15-207, the rules governing constructive contempt.

*Motions and Hearing Before Judge Panos*

Howell's counsel served a subpoena on the prosecutor commanding him to appear and testify about the conversation that took place on March 7, 2016, in which the prosecutor

---

[7] In the agreed statement of facts, the State acknowledged that Howell and other defense witnesses would testify as to Howell's treatment by other detainees at CBIF, but the State did not agree to the accuracy or credibility of that testimony.

[8] Maryland Rule 15-204 provides that "[i]n any proceeding involving a direct contempt for which the court determines not to impose sanctions summarily, the judge, reasonably promptly after the conduct, shall issue a written order specifying the evidentiary facts within the personal knowledge of the judge as to the conduct constituting the contempt and the identity of the contemnor."

indicated that the State could offer Howell, at most, temporary relocation at a hotel. The State responded by filing a protective order to quash the subpoena.

On March 27, 2017, the parties appeared at a motions hearing before the Honorable Christopher L. Panos. The State argued that the conversation between the prosecutor and Howell's counsel was irrelevant, explaining:

> The res gestae of the criminal contempt matter is just that. Was he directed by a sitting Court to testify? And the answer is a yes or a no. And the follow-on for the consideration of the jury is did he comply. Yes or no.

The State's position was that duress is "not a competent defense to direct criminal contempt when the act of contempt is based upon the willful refusal to testify when someone is a compellable witness."

Howell's counsel disagreed, arguing that "there is not a case decided in Maryland that says that the duress defense is not available and there won't be a case like that." Howell's counsel further argued that the altercation outside the courtroom on March 10, 2016 satisfied the elements of duress:

> [HOWELL'S COUNSEL]: At that moment he is right there and he knows the State is going to offer him limited protection, he's not going to be put in any witness protection plan, neither is his family going to be safe. But most immediately he knows that the people who have just verbally and physically assaulted him are outside the courthouse, they told him he's got to come outside at one point. That's what he's suffering from at that moment. And hence--
>
> THE COURT: So therein lies his duress?
>
> [HOWELL'S COUNSEL]: Exactly.

9

The State countered that even if duress were available as a defense to criminal contempt, Howell's situation did not constitute duress. The State argued that Howell was not placed in "impending danger of death or serious bodily harm" and that Howell had a "reasonable opportunity for escape."

After the motions hearing, Judge Panos declared that "it appears unequivocally clear to this Court from [*Piemonte v. United States*], 367 U.S. 556, that the defense of duress does not apply to a criminal contempt action based upon a witness's refusal to testify." Accordingly, Judge Panos ruled that "any testimony in connection with [the prosecutor] that [Howell] might offer would be irrelevant and for this reason the State's motion to quash the subpoena is hereby granted."

The State subsequently filed a motion *in limine* to preclude Howell "from offering evidence of, argument about, or reference to certain information regarding the perceived motive for his contemptuous behavior, i.e., concerns about his personal safety, which the State believes is irrelevant and/or inadmissible." Howell, meanwhile, filed a motion for reconsideration challenging Judge Panos's decision. On April 11, 2017, Judge Panos denied Howell's motion for reconsideration.

*Hearing Before Judge Hargadon*

On April 11, 2017, the parties appeared for a second motions hearing before the Honorable Edward R. K. Hargadon. Howell's counsel presented a proffer of the evidence that he would have admitted to prove duress, including testimony as to the altercations that allegedly took place at the courthouse and in CBIF. Additionally, Howell contended that

10

the prosecutor would have testified that Howell was afraid of Curry and that the State had promised not to disclose Howell's name to the public without advance notice. An expert witness, Dr. Tyrone Powers ("Powers"), would have testified that thirty-eight people had been either seriously injured or murdered in Baltimore in the last ten years in retaliation for their testimony as State's witnesses. Powers would have further testified that the Office of the State's Attorney for Baltimore City has never petitioned the U.S. Marshals Service to enter a State's witness into the Federal Witness Protection Program, even though it is authorized to file such a petition by federal law.

In response to Howell's proffer, the State reiterated its position that duress is not available as a defense to criminal contempt. After hearing argument from each side, Judge Hargadon granted the State's motion to preclude testimony related to Howell's claim of duress:

> THE COURT: Okay. Well, as I said before I think that the reasonings that State is giving for purposes of its motion and the reason that the Defense has given for purpose of this opposition are the same issues that were in front of Judge Panos. And based upon the law of the case, and I understand that both Counsel here are essentially just laying the record for purposes of an appeal, and I'm just kind of a conduit in this whole thing.
>
> But I have to admit that I find some real public policy concerns about if this defense were able to be raised. I don't profess to say that I'm issuing this decision independent of Judge Panos' decision, I want to make that very clear that I'm simply following what his ruling was previously in this case. But I can understand some of the concerns if one were to go down this road of saying well you can simply bring in duress in situations like this.

11

Judge Hargadon went on to note that "this almost is an issue for sentencing."

*Conviction and Sentencing*

After Judge Hargadon's ruling, Howell agreed to plead not guilty on an agreed statement of facts as to Count One, preserving Howell's ability to appeal on the issue of duress. In exchange, the State agreed to a five-year sentence, suspending all but time served, with three years of supervised probation. On the basis of the agreed statement of facts, Judge Hargadon found Howell guilty of one count of contempt and sentenced him to five years in prison, suspending all but time served, with three years of supervised probation.

Additional facts shall be discussed as necessitated by our discussion of the issues on appeal.

## STANDARD OF REVIEW

Maryland Rule 8-131(c) governs our review of an action tried without a jury as follows:

> When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.

The Court of Appeals has further explained the standard of review under Maryland Rule 8-131(c):

> [The appellate courts] give due regard to the trial court's role as fact finder and will not set aside factual findings unless they are clearly erroneous. The appellate court must consider

evidence produced at the trial in a light most favorable to the prevailing party and if substantial evidence was presented to support the trial court's determination, it is not clearly erroneous and cannot be disturbed. Questions of law, however, require our non-deferential review. When the trial court's decision involves an interpretation and application of Maryland statutory and case law, our Court must determine whether the lower court's conclusions are legally correct . . . . Where a case involves both issues of fact and questions of law, this Court will apply the appropriate standard to each issue.

*Clickner v. Magothy River Ass'n Inc.*, 424 Md. 253, 266-67 (2012) (citations and internal quotation marks omitted) (ellipsis in original). Because this case presents only issues of law, we apply the non-deferential *de novo* standard of review.

## DISCUSSION

This appeal implicates two foundational principles of American jurisprudence: the power of the government to compel witness testimony and the authority of the court to hold an individual in contempt for refusing to testify. In this case, a witness, Howell, sought to avoid being held in contempt when he refused to testify. Despite having been granted use and derivative use immunity, Howell refused to testify, claiming that he feared reprisals as a result of his testimony. Howell raised the defense of duress, but the circuit court determined that the duress defense was unavailable to a contempt charge premised upon a refusal to testify.

Criminal contempt is unique among criminal offenses. Unlike other criminal offenses, which generally involve harm perpetrated upon individuals or organizations, contempt is an offense to the court itself. "Criminal contempts of court embrace all acts committed against the majesty of the law or the dignity of the court, and the primary and

13

controlling object sought to be obtained by punishment of such offenders is the vindication of public authority, of which the court is the embodiment, represented at any given time by the presiding judge." *In Ex parte Bowles*, 164 Md. 318, 330 (1933) (citing *Coons v. State*, 134 N.E. 194, 198 (Ind. 1922)); *see also Ashford v. State*, 358 Md. 552, 563 (2000) ("The primary purpose of punishment for criminal contempt . . . is vindication of public authority, embodied in the court and represented by the judge by punishing the contemnor for past misconduct not to compel future compliance or to remedy the harm.").

The government's broad authority to compel witness testimony is integral to the functioning of the American judicial system. *State v. Rice*, 447 Md. 594, 604 (2016) ("[T]he power of the State to compel a witness to testify is at the core of the proper functioning of our criminal justice system.") (citing *Kastigar v. United States*, 406 U.S. 441, 443-44 (1972)). Indeed, the Supreme Court of the United States has discussed the well-established and broad power of the government to compel witness testimony, explaining:

> The power of government to compel persons to testify in court or before grand juries and other governmental agencies is firmly established in Anglo-American jurisprudence. The power with respect to courts was established by statute in England as early as 1562, and Lord Bacon observed in 1612 that all subjects owed the King their 'knowledge and discovery.' While it is not clear when grand juries first resorted to compulsory process to secure the attendance and testimony of witnesses, the general common-law principle that 'the public has a right to every man's evidence' was considered an 'indubitable certainty' that 'cannot be denied' by 1742. The power to compel testimony, and the corresponding duty to testify, are recognized in the Sixth Amendment requirements that an accused be confronted with the witnesses against him,

14

and have compulsory process for obtaining witnesses in his favor. The first Congress recognized the testimonial duty in the Judiciary Act of 1789, which provided for compulsory attendance of witnesses in the federal courts. Mr. Justice White noted the importance of this essential power of government in his concurring opinion in *Murphy v. Waterfront Comm'n*, 378 U.S. 52, 93-94, 84 S. Ct. 1594, 1611, 12 L.Ed.2d 678 (1964):

> 'Among the necessary and most important of the powers of the States as well as the Federal Government to assure the effective functioning of government in an ordered society is the broad power to compel residents to testify in court or before grand juries or agencies. *See Blair v. United States*, 250 U.S. 273, 39 S. Ct. 468, 63 L. Ed. 979. Such testimony constitutes one of the Government's primary sources of information.'

*Kastigar*, *supra*, 406 U.S. at 443-44 (footnotes omitted). There are, of course, certain limitations to the government's power to compel witness testimony. "[T]he power to compel testimony is not absolute. There are a number of exemptions from the testimonial duty, the most important of which is the Fifth Amendment privilege against compulsory self-incrimination." *Id.* at 444 (footnote omitted).

In this case, we are faced with the question of whether a duress defense may be raised by a witness who refuses to testify due to fear of reprisal. The overwhelming majority of courts to address the issue have held that fear of reprisal does not provide a legal basis for a witness's refusal to testify. The Supreme Court addressed this issue, in dicta, in *Piemonte v. United States*, 367 U.S. 556, 559 n.2 (1961). In *Piemonte*, a witness was granted immunity but refused to answer questions before a federal grand jury, arguing that the answers would tend to incriminate him. The United States District Court

15

subsequently entered an order requiring that the witness show cause as to why he should not be held in criminal contempt. At the show cause hearing, the witness explained that he refused to testify because he was afraid for his own safety as well as the safety of his wife and children. The district court rejected the witness's justification and found the witness guilty of criminal contempt. The United States Court of Appeals for the Seventh Circuit affirmed.

Before the Supreme Court, the witness raised arguments relating only to procedural defects, but Justice Frankfurter, writing for the Court, discussed in a footnote whether fear of reprisal could justify Piemonte's refusal to testify:

> Neither before the Court of Appeals nor here was fear for himself or his family urged by Piemonte as a valid excuse from testifying. Nor would this be a legal excuse. Every citizen of course owes to his society the duty of giving testimony to aid in the enforcement of the law. *See Brown v. Walker*, 161 U.S. 591, 600, 16 S.Ct. 644, 648, 40 L.Ed. 819. Lord Chancellor Hardwicke's pithy phrase cannot be too often recalled: '(T)he public has a right to every man's evidence.' 12 Hansard's Debates 693; 8 Wigmore, Evidence (3d ed.), p. 64, s 2192.
>
> If two persons witness an offense-one being an innocent bystander and the other an accomplice who is thereafter imprisoned for his participation-the latter has no more right to keep silent than the former. The Government of course has an obligation to protect its citizens from harm. But fear of reprisal offers an immunized prisoner no more dispensation from testifying than it does any innocent bystander without a record.

*Piemonte v. United States*, 367 U.S. at 559 n.2.

The United States Courts of Appeals for the First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Eleventh Circuits have all adopted the Supreme Court's

16

reasoning in *Piemonte*, explaining that fear cannot excuse a witness's refusal to testify. *See*, *e.g.*, *In re Grand Jury Proceedings*, 13 F.3d 459, 461 (1st Cir. 1994) ("Of course, it has been widely held that a witness' fear of reprisal against himself or his family does not constitute just cause for refusing to testify."); *In re Grand Jury Proceedings*, 943 F.2d 132, 135 (1st Cir. 1991) ("One of appellant's stated reasons, that he feared for himself and for his family, is not just cause for refusing to testify."); *Matter of Grand Jury Investigation (Detroit Police Dep't Special Cash Fund)*, 922 F.2d 1266, 1272-73 (6th Cir. 1991) ("We also disagree with Witness's assertion that fear for his safety and the safety of others satisfies the 'just cause' standard of § 1826(a) . . . Prior to the enactment of § 1826(a), the Supreme Court stated, albeit in dicta, that such concerns would not provide a legal basis for a refusal to testify")[9]; *In re Grand Jury Proceedings*, 914 F.2d 1372, 1372 (9th Cir.

---

[9] 28 U.S.C. § 1826 is the federal statute governing sanctions for recalcitrant witnesses. It provides:

> (a) Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material, the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information. No period of such confinement shall exceed the life of--
>
> > (1) the court proceeding, or
> >
> > (2) the term of the grand jury, including extensions,

1990) ("No federal court in a reported decision has held that fear of retaliation is sufficient reason to refuse to testify. To do so in this case would mean that virtually every prisoner in the United States, and many millions of people at large, would be freed of the duty to appear and testify before a grand jury. We choose to follow the reported decisions of those courts which have already held that fear of physical harm does not excuse a witness from testifying."); *In re Grand Jury Proceedings*, 862 F.2d 430, 432 (2d Cir. 1988) ("We also reject Doe's claim that the defense of duress is available to a civil contemnor."); *In re Grand Jury Proceedings*, 713 F.2d 616, 617 n.1 (11th Cir. 1983) ("Fear of retribution cannot excuse refusal to testify before a grand jury."); *In re Grand Jury Proceedings*, 652 F.2d 413, 414 (5th Cir. 1981) ("In both civil and criminal contempt cases this circuit has held that fear for personal safety is not a defense to a charge arising from refusal of a

---

before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months.

(b) No person confined pursuant to subsection (a) of this section shall be admitted to bail pending the determination of an appeal taken by him from the order for his confinement if it appears that the appeal is frivolous or taken for delay. Any appeal from an order of confinement under this section shall be disposed of as soon as practicable, but not later than thirty days from the filing of such appeal.

(c) Whoever escapes or attempts to escape from the custody of any facility or from any place in which or to which he is confined pursuant to this section or section 4243 of title 18, or whoever rescues or attempts to rescue or instigates, aids, or assists the escape or attempt to escape of such a person, shall be subject to imprisonment for not more than three years, or a fine of not more than $10,000, or both.

18

witness to testify."); *United States v. Patrick*, 542 F.2d 381, 387-88 (7th Cir. 1976) ("[F]ear, by itself, will not legally justify or excuse a witness' refusal to testify in violation of a court order."); *In re Kligo*, 484 F.2d 1215, 1221 (4th Cir. 1973) ("Apart from his claim of fifth amendment privilege, the only reasons Kligo offered for his silence were an unwillingness to implicate other persons and fear for his own safety. Quite properly, the district court ruled that these reasons did not provide just cause for refusal to testify."); *LaTona v. United States*, 449 F.2d 121, 122 (8th Cir. 1971) ("The concept of due process does not encompass the privilege of a witness not to testify because of fear or reprisals."); *In re Grand Jury Investigation John Doe*, 542 F. Supp. 2d 462, 468-71 (E.D. Va. 2008) ("[C]ourts in this circuit and elsewhere have concluded that an immunized witness is not excused from testifying before the grand jury where, as here, he or she fears for his or her own safety or the safety of others.").

Despite the various circuit courts' general acceptance of the principle that fear cannot justify the refusal of a witness to testify, at least two of the United States Circuit Courts have indicated that a duress defense may, in certain circumstances, be invoked in a contempt case. The United States Court of Appeals for the Fifth Circuit explained that "[i]t [wa]s not necessary that we decide whether duress can never be invoked in a contempt case" because, "[a]ssuming *arguendo* that [the witness] can raise a duress defense, he has not brought himself within it." *In re Grand Jury Proceedings*, 652 F.2d at 414. The court further explained that fear for personal and family safety "is a legitimate factor in mitigation." *Id.* Furthermore, the United States Court of Appeals for the Seventh Circuit

19

has explained that "duress may in some circumstances serve as an equitable defense to incarceration for civil contempt." *Matter of Grand Jury Proceedings of Dec., 1989*, 903 F.2d 1167, 1170 (7th Cir. 1990). The court stressed, however, that "[a] recalcitrant witness must demonstrate . . . [an] overwhelming sense of immediate danger" that renders the witness "unable to act freely [or] to testify." *Id.* Under the facts of the particular case, the United States Court of Appeals for the Seventh Circuit determined that the duress defense was inapplicable because the witness "failed to demonstrate a palpable imminent danger." *See also State v. Pothier*, 721 P.2d 1294, 1298-99 (N.M. 1986) (holding that the defense of duress was unavailable when the defendant witness's fear of reprisals was not premised upon a threat of immediate and serious bodily harm).

We agree with the general principle that fear does not excuse a recalcitrant witness's refusal to testify. Under Maryland law, however, duress "is a defense as to all crimes except taking the life of an innocent person." *McMillan v. State*, 428 Md. 333, 348 (2012) (quotation omitted). In this appeal, we need not determine whether the duress defense is *per se* unavailable to a recalcitrant witness charged with contempt. [10] As we shall explain, assuming *arguendo* that duress can be a valid defense for contempt, the defense is not generated by the evidence presented in this case.

---

[10] The circuit court determined that, as a matter of law, the duress defense was not available to any witness charged with contempt for refusing to testify. For the reasons explained herein, we need not reach this issue because the defense was not generated by the facts of this case.

The duress defense "arises when an individual is faced with a choice of two evils, and one is the commission of an illegal act." *State v. Crawford*, 308 Md. 683, 691 (1987).[11] We have explained:

> The rationale of the defense is not that the defendant, faced with the unnerving threat of harm unless he does an act which violates the literal language of the criminal law, somehow loses his mental capacity to commit the crime in question. Rather it is that, even though he has the mental state which the crime requires, his conduct which violates the literal language of the criminal law is justified because he has thereby avoided a harm of greater magnitude.

*Wentworth v. State*, 29 Md. App. 110, 117-18 (1975).

In order for duress to constitute a defense to the commission of an illegal act, "the duress by another person on the defendant must be **present, imminent, and impending**, and of such a nature as to induce well grounded apprehension of death or serious bodily injury if the act is not done." *McMillan*, *supra*, 428 Md. at 348 (quotation and citations omitted) (emphasis supplied). The alleged duress "must be of such a character as to leave no opportunity to the accused for escape." *Id.* (quotation and citations omitted). Critically, "[m]ere fear or threat by another is not sufficient nor is a threat of violence at some prior time." *Id.* (quotation and citations omitted). Furthermore, "the defense cannot be claimed

---

[11] *Crawford*, *supra*, involved the necessity defense rather than the duress defense. "Necessity is similar to duress, except that the compulsion to act comes from the physical forces of nature (storms, privations) rather than from human beings." *McMillan*, *supra*, 428 Md. at 361 (citation and internal quotation marks omitted). The comment to Maryland Criminal Pattern Jury Instruction 5.03 explains that there is not a separate pattern jury instruction on necessity "because of the interrelationship between necessity and duress."

21

if the compulsion arose by the defendant's own fault, negligence or misconduct." *Id.* (quotation and citations omitted).

The elements of duress set forth in the Maryland Criminal Pattern Jury Instruction are:

> (1) the defendant actually believed that the duress placed [him][her] in immediate and impending danger of death or serious bodily harm;
>
> (2) the defendant's belief was reasonable;
>
> (3) the defendant had no reasonable opportunity for escape; and
>
> (4) the defendant committed the crime because of the duress.
>
> The defense of duress is not established by proof that the defendant had been threatened with violence at an earlier time. [He] [she] must have been under a present threat at the time of the commission of the crime charged.
>
> In order to convict the defendant, the State must prove that the defendant did not act under duress. This means that you are required to find the defendant not guilty unless the State has persuaded you, beyond a reasonable doubt, that at least one of the four factors of duress was absent.

Maryland State Bar Ass'n, Maryland Criminal Pattern Jury Instructions 5:03, (2d ed. 2012).[12]

---

[12] The Maryland Criminal Pattern Jury Instructions Committee recently agreed to revise the pattern jury instruction on duress to change the phrase "immediate and impending danger" to "immediate or impending danger." This change was based upon the Court of Appeals's decision in *Porter v. State*, 455 Md. 220 (2017), which addressed similar language in a jury instruction on imperfect self-defense. In response to *Porter*, the committee changed the language in the pattern instruction for imperfect self-defense from "immediate and impending" to "immediate or impending" in the fall of 2017. The

Pursuant to Maryland Rule 4-325(c), "[t]he court may, and at the request of any party shall, instruct the jury as to the applicable law[.]" The defense of duress is not generated "unless the defendant has produced 'some evidence' sufficient to give rise to a jury issue on the defense." *Marquardt v. State*, 164 Md. App. 95, 131 (2005) (quoting *Dykes v. State*, 318 Md. 206, 216 (1990)). "A particular instruction is generated when a defendant can point to some evidence . . . [that] supports the requested instruction. Some evidence is not strictured by the test of a specific standard. It calls for no more than what it says -- 'some', as that word is understood in common, everyday usage. It need not rise to the level of 'beyond a reasonable doubt' or 'clear and convincing' or 'preponderance.'" *Jarrett v. State*, 220 Md. App. 571, 586 (2014) (quotation and citation omitted). "The threshold determination of whether the evidence is sufficient to generate the desired instruction is a question of law for the judge." *Id.* at 585 (citation omitted).

The record reflects that, in this case, Howell failed to present "some evidence" to generate the defense of duress. Howell alleges that the foundation for the duress defense was the altercation that occurred in the courthouse hallway on March 10, 2016, when five or six men threatened him with violence and told Howell, "you got to come out on the street sometime." The men were subsequently removed from the courthouse by security. At the time Howell was on the witness stand, refusing to testify, the alleged assailants were

committee recently voted to similarly amend the duress pattern instruction as well. The newest edition of the Maryland Criminal Pattern Jury Instructions, reflecting this amendment, had not yet been published as of the date this opinion was filed.

23

not present and, therefore, did not present an "imminent" or "impending" threat to Howell's safety. *McMillan*, *supra*, 428 Md. at 348.[13] Howell's fear -- which, for purposes of this appeal, we assume was a legitimate fear -- "is not sufficient [to generate the defense of duress] nor is a threat of violence at some prior time." *Id.*[14]

---

[13] Howell asserts that the circumstances of this case are similar to those in *McMillan*, which the Court of Appeals determined were sufficient to generate the duress defense. *McMillan* was a felony murder case. McMillan's involvement in the murder was knocking on the victim's door in order to facilitate the entry of two of the defendant's acquaintances, both of whom were identified gang members. The two acquaintances thereafter robbed the victim and bludgeoned him to death. McMillan and the victim knew each other and had been neighbors for a period of time. McMillan asserted that he was afraid of what the acquaintances would do to him if he refused to knock on the victim's door.

McMillan based his claim of duress on a threat made by one of the acquaintances. After McMillan said that he did not want to be involved in a robbery, the acquaintance told the defendant, "it's GBA [guilt by association], you get down or you lay down, you gonna be with that old man in the house or you gonna leave out the house with us, which one you wanna do?" 428 Md. at 341. The Court held that the duress defense was generated because "[t]he jury could infer reasonably that the [defendant] was aware of a real, immediate threat posed by [the two acquaintances] if he did not participate in the robbery." *Id.* at 356.

In this case, unlike *McMillan*, at the time Howell engaged in criminally contemptuous conduct, he was not with the individuals who had threatened him. Indeed, the individuals who had threatened Howell had, at that point, been removed from the building. Howell, therefore, was not faced with an imminent or impending threat.

[14] The circuit court inquired of counsel whether the duress defense might be generated if a witness refused to testify when someone "had a gun in the courtroom . . . [and] indicated [that] if [the witness] testif[ies] I'm going to shoot [the witness] . . . as opposed to someone who said five minutes, a day, a week earlier has said we're going to get you if you testify?" The State conceded that, in that hypothetical, "that's where the immediacy that is lacking in this case might be applicable." The court commented that "It would help that [an assailant] would not be able to get a gun into the courtroom." In this appeal, we do not reach the issue of precisely what type of threat to a witness would constitute an imminent or impending threat of death or serious harm which allowed the witness no opportunity for escape.

Furthermore, at no time did Howell request assistance from the court after the threatening incident in the courthouse corridor. If Howell had requested a security escort, for example, the escort could have, at a minimum, removed any potential immediacy from the threat. *Id.* at 348 (requiring that the threat must be "of such character as to leave no opportunity to the accused for escape"). For these reasons, we hold that the duress defense was not generated by the facts alleged by Howell.

In so holding, we do not intend to minimize the plight faced by witnesses who fear retaliation as a result of their testimony. Witnesses' fears are often well-founded, and this Court is not blind to the seriousness of threats against witnesses.[15] Witness intimidation and retaliation are exceptionally serious societal problems, and in this opinion, we are not suggesting otherwise or minimizing that reality. Indeed, even when refusing to testify is not legally excusable, there are certainly circumstances under which a witness's reticence to testify would be understandable. Therefore, the reasons for a witness's contemptuous conduct are certainly appropriate factors for the court's consideration in mitigation. *See In re Grand Jury Proceedings*, 652 F.2d at 414; Md. Rule 15-203 ("The court shall afford the

---

[15] We are cognizant of the fact that witnesses have been murdered for cooperating with law enforcement. *See*, *e.g.*, Cheryl W. Thompson, *Dozens in D.C., Maryland Paid the Ultimate Price for Cooperating with Police*, The Washington Post (January 10, 2015), *available at* http://wapo.st/1C1puOU?tid=ss_mail&utm_term=.f824c8b01a04 (reporting that "at least 37 people in the District [of Columbia] and Maryland . . . have been killed since 2004 for cooperating with law enforcement or out of fear that they might, according to a Washington Post examination of hundreds of police and court records.").

25

alleged contemnor an opportunity, consistent with the circumstances then existing, to present exculpatory or mitigating information.").

While cognizant of the significant social policy implications of the issues presented in this appeal, our role is to apply the law while assessing the merits of Howell's appellate claims. As we discussed *supra*, Howell presented no legal excuse for his refusal to testify. We hold, therefore, that the circuit court did not err by concluding that the duress defense was unavailable to Howell in this case. Accordingly, we affirm.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

26