Arlin J. BUDOO, Appellant,

v.

UNITED STATES, Appellee.

No. 94–CF–567.

District of Columbia Court of Appeals.

Argued April 15, 1996.

Decided May 30, 1996.

---

Robert W. Mance was on the brief, Washington, for appellant.

Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Roy W. McLeese, III, J. Edward Agee, and Mary B. McCord, Assistant United States Attorneys, were on the brief, for appellee.

Before KING and REID, Associate Judges, and GALLAGHER, Senior Judge.

REID, Associate Judge.

After a jury trial in mid-December 1993, appellant Arlin J. Budoo was convicted of criminal contempt, in violation of D.C.Code § 11–944 (1995 Repl.). He was a witness to a murder and refused to testify against those charged with the murder. He was sentenced under the Youth Rehabilitation Act to incarceration for a period of twenty to sixty months. Budoo filed a timely appeal. We affirm.

## FACTUAL SUMMARY

On July 22, 1992, Budoo was a passenger in a car whose other occupants were Monte Glen,[1] Sean Branch, Isaiah Taylor, and Michael Douglas. When Glen became aware that Branch, Taylor and Douglas planned to kill him, he fled the car. However, Taylor followed him and shot him ten times. Budoo witnessed the murder.[2]

Budoo initially refused to provide any information about the murder because he was afraid for himself and his family.[3] Eventually he gave a statement to Detective Susan Blue of the Metropolitan Police Department, but declined any police protection. When he was presented to the grand jury on January 28, 1993, after being given a letter granting him "limited" immunity against prosecution for the murder of Glen, Budoo invoked his Fifth Amendment privilege against self-incrimination and refused to testify. He was then given "blanket or complete immunity," except for perjury or false statements.[4] Budoo again appeared before the grand jury on February 8, 1993, and relied on the Fifth Amendment in refusing to testify. He also

---

1. Glen's name also appears in the record as "Glenn."

2. Budoo was charged in the case after refusing to provide any information about the murder. The charges were later dropped.

3. He feared for the safety of his mother, grandfather, twelve year old brother, father and two or three aunts.

4. As indicated below, the terms "limited immunity," "complete immunity" and "blanket immunity" were used by the trial judge who presided over the Taylor trial. In his testimony on December 14, 1993, Judge von Kann stated:

> I ruled that [the order of Chief Judge John Garrett Penn of the United States District Court] effectively provided a complete or so-called blanket immunity to Mr. Budoo with respect to any testimony he might be called upon to give ... and therefore he no longer had a Fifth Amendment privilege to refuse to testify in that trial.
> I concluded that in this case the order by Judge Penn granted Mr. Budoo so-called blanket or complete immunity respecting any testimony that he might give.... It was not limited to certain specific subjects or questions. Judge von Kann contrasted this type of immunity with "so-called limited immunity" which is "immunity respecting certain matters but not others."

The Assistant United States Attorney, who also testified on December 14, 1993, described the immunity letter given to Mr. Budoo prior to January 28, 1993, as one that did not protect him from prosecution for perjury or other crimes. She stated that the immunity granted by Judge Penn's order was "broader." However, it is clear that immunity was granted to Budoo under the use immunity statute, 18 U.S.C. §§ 6001 et seq.; see United States v. Romano, 583 F.2d 1, 5 (1st Cir.1978); and United States v. Patrick, 542 F.2d 381, 385, cert. denied, 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977). As the Assistant United States Attorney testified, she requested a formal grant of immunity under 18 U.S.C. §§ 6001 et seq., and the order issued by Chief Judge Penn provided that "[n]o testimony or other information may be used against Arlin Budoo in any criminal case, except for the prosecution for perjury, giving false statements or otherwise."

said he was afraid, but would not give a reason for his fear.

Despite his refusal to testify before the grand jury, Budoo was subpoenaed to appear as a witness at the trial of Taylor on July 24, 1993. However, upon learning that a witness who testified the previous day had been murdered, Budoo once again refused to testify. As a result, the trial court held a hearing concerning whether Budoo could be compelled to testify. The trial judge ordered Budoo to testify because he had "blanket immunity" and hence had no basis for failing to testify. Budoo continued to resist testifying, was charged with civil contempt and incarcerated "until the completion of the trial." The government dismissed the cases of Branch and Douglas, without prejudice; the trials had been scheduled to commence after the Taylor case. Taylor entered a guilty plea.

On June 30, 1993, Budoo was charged with contempt, in violation of D.C.Code § 11–944(a), "in that he willfully and knowingly disobeyed an order of the Court to testify, thereby causing an obstruction of the orderly administration of justice." Prior to his indictment for contempt, he appeared before the grand jury to explain that fear for himself and his family had prompted his refusal to testify. Although he gave some information to the grand jury about the murder, he did not provide key details about the participants in the murder. He was indicted in July 1993, for a violation of D.C.Code § 11–944(a) in that he did "willfully disobey a lawful order of the [trial judge]."

Prior to Budoo's trial on the contempt charge, the government made a motion in limine to exclude his duress defense. The trial court granted the motion on October 13, 1993. Budoo then moved for clarification. In essence, he wanted assurance that the October 1993, order of the trial court did not preclude his reliance on a necessity defense.[5] The trial judge denied the motion and stated in part:

> [D]efendant Budoo failed to meet his threshold burden to establish that he had no reasonable alternative to violating ... the law. To the contrary, despite the government's offer of protection and [the trial judge's] assurance to defendant that the government was willing to discuss witness security with him, Mr. Budoo declined even to discuss what his options would be under the Witness Protection Program.

After government testimony from the assistant U.S. attorney, the trial judge assigned to the Taylor case, and law enforcement agents, and the testimony of Budoo and his defense counsel, the jury convicted Budoo.

Budoo was sentenced to twenty to sixty months following a sentencing hearing which spanned two days. During the hearing on April 12, 1994, the trial judge stated in part:

> I think Mr. Budoo is in a genuine dilemma. I respect his fear, but he has to also respect that the community has a right and a legitimate interest in prosecuting murder.... The message is that the state is entitled to his evidence in the prosecution of murder; that he has an alternative; that he turned down the alternative. He is entitled to do that. I will respect his decision, but he needs to pay a consequence. It can't be a decision with no consequence.

### ANALYSIS

Budoo contends that the trial court erred in refusing to instruct the jury on the defense of necessity. However, he never requested a jury instruction on the necessity defense. Nonetheless, he did raise the de-

---

5. At common law, a distinction was made between duress and necessity. Duress "excuse[d] criminal conduct where the actor was under an unlawful threat of imminent death or serious bodily injury, which threat caused the actor to engage in conduct violating the literal terms of the criminal law." *United States v. Bailey,* 444 U.S. 394, 409, 100 S.Ct. 624, 634, 62 L.Ed.2d 575 (1980). On the other hand, "[w]hile the defense of duress covered the situation where the coercion had its source in the actions of other human beings, the defense of necessity, or choice of evils, traditionally covered the situation where physical forces beyond the actor's control rendered illegal conduct the lesser of the two evils." *Id.* at 409–10, 100 S.Ct. at 634. *See also United States v. Contento–Pachon,* 723 F.2d 691, 693–95 (9th Cir.1984), for a discussion of the distinction between duress and necessity. "Modern cases have tended to blur the distinction between duress and necessity." *Bailey,* 444 U.S. at 410, 100 S.Ct. at 634.

fense in his motion for clarification of the trial court's order pertaining to duress. We review the trial court's legal conclusions *de novo*. However, we review the trial court's factual findings under a "clearly erroneous" standard. *See Griffin v. United States*, 618 A.2d 114, 117 (D.C.1992).

■ We have never before decided whether an offer of government protection, or entrance into the Witness Protection Program provides a reasonable, legal alternative to refusal to testify in a criminal case. However, the issue has been raised and resolved in some federal cases which we find persuasive. Applying the principles expressed in those cases, we conclude that Budoo was not entitled to rely on the necessity defense because "there was a reasonable, legal alternative to violating the law, 'a chance both to refuse to do the criminal and also to avoid the threatened harm'...." *Bailey, supra*, 444 U.S. at 410, 100 S.Ct. at 635. In *In re Grand Jury Proceedings*, 943 F.2d 132, 135 (1st Cir.1991), the defendant refused to testify before the grand jury even though he was offered entry into the Witness Protection Program. In affirming his contempt conviction, the court stated:

> The witness may not frustrate the grand jury's access to the information on the basis that he will be put in danger by giving it, and, at the same time, reject an offer to remove or minimize the danger.

(quoting *In re Grand Jury Proceedings (Gravel)*, 605 F.2d 750, 752–53 (5th Cir. 1979)). In *In re Grand Jury Proceedings (Gravel), supra*, Mark A. Gravel was convicted of contempt for failure to testify before the grand jury regarding the source of cocaine that had been brought into a section of the state of Louisiana. He refused to testify even though he was given immunity and offered governmental protection. In upholding his contempt conviction and the denial of the right to invoke a duress defense, the court stated:

> The government's offer to protect Gravel is at least a reasonable alternative available to him, and he has refused to avail himself of it. Thus, even if duress is otherwise available as a defense, Gravel has not brought himself within it.

Similarly, in *United States v. Esposito*, 834 F.2d 272, 276 n. 2 (2d Cir.1987), the court rejected an argument that evidence, which was suppressed, supported a duress defense based on fear. The court said in passing:

> To secure witness cooperation where the witness has been threatened, the Government created the federal witness program, see 18 U.S.C. § 3521 (1985), which often provides for the change in identity and relocation of witnesses. Esposito was offered and declined protection under this program.

*See also In re Grand Jury Proceedings*, 652 F.2d 413, 414 (5th Cir.1981).

In considering the necessity defense, posited in an unlawful entry case involving social action in behalf of the homeless, we said that:

> The defense is not available where: (1) there is a legal alternative available to the defendants that does not involve violation of the law ...; (2) the harm to be prevented is neither imminent, nor would be directly affected by the defendants' actions ...; and (3) the defendants' actions were not reasonably designed to actually prevent the threatened greater harm.

*Griffin v. United States*, 447 A.2d 776, 778 (D.C.1982), *cert. denied*, 461 U.S. 907, 103 S.Ct. 1879, 76 L.Ed.2d 810 (1983) (citations omitted).

Here, the trial judge specifically found that "despite the government's offer of protection and [a prior trial judge's] assurance to [Budoo] that the government was willing to discuss witness security with him, [he] declined even to discuss what his options would be under the Witness Protection Program." Hence, he did not avail himself of an available, reasonable and legal alternative to his violation of the law. He had been given "complete immunity," except for perjury or false statements, for his testimony and offered government protection, but still refused to testify. Moreover, although he must have been frightened by the fact that a witness who testified against Taylor was killed the day before Budoo was scheduled to testify, the record on appeal reveals no harm or threat of harm that befell Budoo and his

family at any time between Glen's murder and Budoo's trial for criminal contempt.

By his own actions, Budoo deprived the government of his testimony, without even discussing the steps that could have protected his family and himself. As the Supreme Court observed in *Piemonte v. United States*, 367 U.S. 556, 559 n. 2, 81 S.Ct. 1720, 1722 n. 2, 6 L.Ed.2d 1028 (1961), a case in which a prisoner invoked the necessity defense out of fear for his safety and that of his family, despite his statutory immunity:

> Neither ... fear for himself or his family ... would ... be a legal excuse. Every citizen of course owes his society the duty of giving testimony to aid in the enforcement of the law. See *Brown v. Walker*, 161 U.S. 591, 600, 16 S.Ct. 644, 648, 40 L.Ed. 819.... The Government of course has an obligation to protect its citizens from harm. But fear of reprisal offers an immunized prisoner no more dispensation from testifying than it does any innocent bystander without a record.

Similar to the disposition in *Piemonte*, Budoo cannot rely upon fear as a way of avoiding the trial court's order to testify because there was a legally available and reasonable alternative to his violating the law. The trial judge recognized that Budoo faced a "dilemma" and could reject the legal alternative, but that his decision to do so could not be one "with no consequences."

Consequently, for the foregoing reasons, we are constrained to affirm his conviction and sentence.[6]

*Affirmed.*

---

6. Budoo raises no issue on appeal as to whether his twenty to sixty month term violated the rule of proportionality. *See Caldwell v. United States,* 595 A.2d 961, 968–72 (D.C.1991). Hence that issue is not before us.