*Travis Howell v. State of Maryland*
No. 43, September Term 2018

**Criminal Law – Duress Defense.**  To generate the common law defense of duress in a criminal trial, the defendant must, among other things, produce some evidence that he or she committed the crime because of a well-grounded apprehension of a "present, immediate, and impending" threat of death or serious bodily injury with no reasonable opportunity of escape.

**Criminal Law – Duress Defense – Exceptions.**  As a matter of public policy, duress is not a defense to intentional murder.  The Court declined to decide whether public policy precludes a duress defense in a contempt prosecution of a witness who refused to testify in a criminal trial.

**Criminal Law – Refusal of Witness to Testify – Contempt – Duress Defense**.  A witness in a murder trial refused to testify and, as a result, was prosecuted for contempt of court. Evidence proffered by the witness at his contempt trial that he had refused to testify out of fear of reprisal for his anticipated testimony did not generate a duress defense.

IN THE COURT OF APPEALS
OF MARYLAND

No. 43

September Term, 2018

_____

TRAVIS HOWELL

V.

STATE OF MARYLAND

_____

Barbera, C.J.,
*Greene
McDonald
Watts
Hotten
Getty
Wilner, Alan M. (Senior
Judge, Specially Assigned),

JJ.

_____

Opinion by McDonald, J.

_____

Filed: August 22, 2019

*Greene, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Maryland Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

No one is eager to testify in a criminal trial. If a witness is, it likely calls into question the motives and veracity of that witness. Because the criminal justice system rests on a key premise that the factfinder, whether judge or jury, is entitled to every person's evidence, compulsory process, such as subpoenas and material witness warrants, is available to ensure that reluctant witnesses appear and testify.

There are exceptions to this civic and legal obligation to testify. An important one is the constitutional right not to be compelled to incriminate oneself. That privilege, however, may be overridden when the State promises not to use the testimony against the witness and a court formalizes that promise in an order "immunizing" the witness in conjunction with a direction to testify. A failure to comply with that direction may be punished as a contempt of court.

Petitioner Travis Howell was called to testify in a murder trial in the Circuit Court for Baltimore City, but declined to answer any questions on the basis of the privilege against self-incrimination. After the court issued an order immunizing him and directing him to testify, he persisted in refusing to answer questions and was charged with contempt. At the trial of the contempt charge, he attempted to raise the common law defense of duress, claiming that he had been assaulted and threatened with retribution for his anticipated testimony. The trial court rejected that defense as a matter of law and found Mr. Howell guilty of contempt.

Mr. Howell appealed his conviction. In that appeal, the State contended that duress is unavailable as a matter of law as a defense to a contempt charge for refusing to testify. The Court of Special Appeals held that, regardless of the answer to that question, Mr. Howell failed to proffer sufficient evidence of duress to generate that defense. We agree.

## I

## Background

### A.     *The Common Law Defense of Duress*

Duress is a common law defense in Maryland. This Court recently defined duress as follows, citing various treatises and other states' formulations:

> [T]o constitute a defense, the *duress by another person on the defendant must be present, imminent, and impending*, and of such a nature as to induce *well grounded apprehension of death or serious bodily injury* if the act is not done. It must be of such a character as to leave *no opportunity to the accused for escape.* Mere fear or threat by another is not sufficient nor is a threat of violence at some prior time. The defense cannot be raised if the apprehended harm is only that of property damage or future but not present personal injury. … [T]he defense cannot be claimed if the compulsion arose by the defendant's own fault, negligence or misconduct.

*McMillan v. State*, 428 Md. 333, 348-49 (2012) (emphasis added) (internal quotations and citations omitted).[1] To generate this defense, a defendant must meet the "relatively low threshold" of showing "some evidence" of duress. 428 Md. at 355.

---

[1] In its opinion in this case, the Court of Special Appeals used a pattern instruction developed by a committee of the Maryland State Bar Association ("MSBA"), as it was worded at the time of Mr. Howell's trial, as a reference on the elements of the duress defense:

The duress defense serves the public policy that "the law ought to promote the achievement of higher values at the expense of lesser values, and sometimes the greater good for society will be accomplished by violating the literal language of the criminal law."

---

> You have heard evidence that the defendant acted under the influence of an overpowering force. This is called duress. You are required to find the defendant not guilty if all of the following four factors are present:
>
> (1) the defendant actually believed that the duress placed [him] [her] in immediate and impending danger of death or serious bodily harm;
>
> (2) the defendant's belief was reasonable;
>
> (3) the defendant had no reasonable opportunity for escape; and
>
> (4) the defendant committed the crime because of the duress.
>
> The defense of duress is not established by proof that the defendant had been threatened with violence at an earlier time. [He] [she] must have been under a present threat at the time of the commission of the crime charged.
>
> In order to convict the defendant, the State must prove that the defendant did not act under duress. This means that you are required to find the defendant not guilty unless the State has persuaded you, beyond a reasonable doubt, that at least one of the four factors of duress was absent.

MSBA, Maryland Criminal Pattern Jury Instructions, 5:03 (2d ed. 2012). In using "[him] [her]" and "[he] [she]," the pattern instruction seems to assume that the object of the threatened danger must be the person claiming duress. This Court has not addressed the question of whether a defendant claiming duress must be the threatened party, or whether a threat to a third person may be the basis of the defense. "Some states have limited the defense of duress to be applicable only when the harm threatened is against the defendant. … On the other hand, some courts and leading scholars have found that duress can be applicable when the threat of harm targets a third party." 2 David E. Aaronson, Maryland Criminal Jury Instructions and Commentary at 1774 (Matthew Bender 2018). In addition, legislatures in several other states take the latter view. *See, e.g.*, 18 Pa. Cons. Stat. Ann. §309 ("force against his person or the person of another"); Del. Code Ann. tit. 11, §431 ("force against the defendant's person or the person of another"); *cf.* Uniform Laws Annotated, Model Penal Code §2.09 ("force against his person or the person of another"). In any event, this issue has not been raised in this case.

*Sigma Reproductive Health Center v. State*, 297 Md. 660, 676 (1983).[2]  Duress is not premised on a person lacking "the mental element which the crime in question requires." *Id.*  Rather, when a person faces a "choice of evils, the law prefers that he avoid the greater evil by bringing about the lesser evil." *Id.*

While duress is available as a defense to many criminal charges, it is "well-settled" that it is not available as a defense to intentional murder. *McMillan*, 428 Md. at 348.  The exception for intentional murder is rooted "as a matter of social policy" in an unwillingness to justify the intentional killing of an innocent person. *Id*. at 350-51.[3]

## B. Facts and Proceedings

### 1. The Federal Prosecution of Mr. Howell

*Federal Indictment and Plea Agreement*

In 2011, Travis Howell was indicted in the United States District Court for the District of Maryland on federal drug offenses. *See United States v. Travis Howell*, Crim. No. RDB-11-0561.  On March 27, 2012, Mr. Howell pled guilty pursuant to a plea agreement and, among other things, agreed to cooperate with law enforcement and testify truthfully in any future case in which he was called as a prosecution witness.

---

[2] In *Sigma*, the Court's discussion concerned both necessity and duress, which are closely related defenses.  297 Md. at 675 ("When the pressure is from human beings, the defense, if applicable, is called duress rather than necessity.").

[3] In *McMillan*, the Court held that this exception did not extend to felony murder.

*2012 State Grand Jury Testimony of Mr. Howell*

In October 2012, Mr. Howell appeared before a grand jury in the Circuit Court for Baltimore City and testified in accordance with his plea agreement. He told the grand jury that, in a conversation with Mr. Howell, Freddie Curry had confessed to murdering Raynard Benjamin in retaliation for the kidnapping of Mr. Curry's girlfriend. Mr. Curry was later charged with that murder in the Circuit Court for Baltimore City.

*Federal Sentencing of Mr. Howell*

Subsequently, in December 2012, Mr. Howell was sentenced in federal court. At that proceeding, the federal prosecutor cited Mr. Howell's cooperation with State law enforcement and his grand jury testimony in Baltimore City concerning the homicide case. The State and Mr. Howell later stipulated that Mr. Howell did not receive a sentence reduction at that time for his grand jury testimony concerning the murder of Mr. Benjamin because he had not yet testified at Mr. Curry's trial.

2. Mr. Howell's Refusal to Testify at the State Murder Trial

*Subpoena and Material Witness Warrant*

The murder trial of Mr. Curry was scheduled to begin in March 2016 in the Circuit Court for Baltimore City. By that time Mr. Howell had been released from prison under his federal sentence and was on federal supervised release. Mr. Howell refused to comply with a subpoena requiring him to testify at that trial. At the behest of the State, a material witness warrant was issued for Mr. Howell. He was arrested on that warrant a few weeks before the trial began and released on electronic monitoring after promising to appear voluntarily to testify.

5

*Claim of Privilege Against Self-Incrimination, Grant of Immunity, Order to Testify*

On March 7, 2016, Mr. Howell appeared at a pretrial hearing for the Curry trial. Mr. Howell declined to answer questions other than his name, asserting the privilege against compelled self-incrimination. The State moved for an order under Maryland Code, Courts & Judicial Proceedings Article ("CJ"), §9-123[4] compelling Mr. Howell to testify and granting him use and derivative use immunity with respect to that testimony. The Circuit Court granted the motion, ordered Mr. Howell to appear again at the trial on March 10, and advised him of the consequences of refusing to testify – that is, being held in contempt and imprisoned for that offense.

*Continued Refusal to Testify*

On March 10, Mr. Howell again appeared in court. The Circuit Court reviewed the events of his previous court appearance, reminded him of his obligation to testify under the order issued at the previous hearing, and again ordered him to testify. Nevertheless, Mr. Howell refused to answer any question posed by the prosecutor, responding to each one with "I respectfully refuse to testify." The Circuit Court then held Mr. Howell in direct contempt. The court stated that it would defer imposition of a sanction for the contempt

---

[4] Under that statute, if a witness declines to testify in a criminal trial on the basis of the privilege against self-incrimination and if the prosecutor determines that the testimony "may be necessary in the public interest," the prosecutor may file a motion for the court to issue an order compelling the witness to testify. Any testimony given by the witness in compliance with that order may not be used, directly or indirectly, against the witness in any criminal prosecution, except for perjury, obstruction of justice, or failure to comply with the order. If the witness refuses to comply with the order, that refusal is to be treated as a direct contempt of court. CJ §9-123; *see also* Maryland Rule 4-631; *State v. Rice*, 447 Md. 594, 604-8 (2016).

and allow Mr. Howell an opportunity to present exculpatory information the next day. Mr. Howell was taken into custody to be returned to court the next day.

On March 11, Mr. Howell returned to court and, after being reminded of the order requiring him to testify and granting him immunity, again refused to answer any questions posed by the prosecutor. In response to questions by the court, Mr. Howell stated that he had been involved in an altercation outside the courtroom before his appearance the previous day, and that the altercation related to his refusal to testify.

Mr. Howell's attorney then proffered certain information in mitigation of Mr. Howell's refusal to testify. According to Mr. Howell's attorney, when Mr. Howell had testified before the grand jury in 2012, he had been promised by the prosecutor who presented him to the grand jury that he would receive advance warning of when his cooperation with the prosecution would be made public. However, he asserted that Mr. Howell had not received advance notice of an article that had appeared in the online version of the Baltimore Sun about the Curry trial that described Mr. Howell as a witness for the State. Under questioning by his attorney and the Curry trial prosecutor,[5] Mr. Howell confirmed that the grand jury prosecutor had promised him advance notice of the disclosure of his participation in the Curry trial – a promise he believed had not been kept despite the fact that he had been arrested and appeared in open court on a material witness warrant for

---

[5] The Assistant State's Attorney assigned to Mr. Curry's 2016 trial was not the same Assistant State's Attorney who presented Mr. Howell's testimony to the grand jury in 2012.

the Curry trial a few weeks earlier. He also stated that he had been threatened by five or six individuals outside the courtroom the previous day and that he was frightened.

*Mr. Howell is Held in Contempt*

The Circuit Court found that Mr. Howell's refusal to testify that day and the previous day (March 10 and 11, 2016) amounted to a direct contempt of the court. The court delayed imposing a sanction and continued to detain Mr. Howell under the material witness warrant until the conclusion of the Curry trial, "hoping against hope" that Mr. Howell would change his mind about testifying.

Mr. Howell did not change his mind about testifying and, shortly thereafter, the Curry trial ended in an acquittal of Mr. Curry. On March 14, 2016, Mr. Howell was indicted on two counts of criminal contempt for his refusal to testify on March 10 and 11, respectively. Mr. Howell requested a jury trial.

The Circuit Court did not conduct further summary proceedings on direct criminal contempt and issued an order directing that the prosecution of Mr. Howell for contempt should proceed in the same manner as constructive criminal contempt pursuant to Maryland Rules 15-205 and 15-207. Subsequent proceedings occurred before judges other than the judge who had presided at the Curry trial and had found Mr. Howell in direct criminal contempt.[6]

---

[6] "Direct contempt" includes "a contempt committed in the presence of the judge," whereas "constructive contempt" is "any contempt other than a direct contempt." Maryland Rule 15-202. A sanction for such a contempt may be imposed summarily, either immediately or later in the same proceeding. Maryland Rule 15-203. When a contempt is not resolved summarily, but proceeds as a separate criminal action, it is prosecuted as a constructive contempt. Maryland Rule 15-204. The distinction between direct contempt

3.      The State Prosecution of Mr. Howell for Contempt

*Pretrial Motions*

In connection with the contempt prosecution, Mr. Howell's counsel caused a subpoena to be issued to the Curry trial prosecutor. According to Mr. Howell's attorney, he hoped to elicit testimony about a telephone conversation that the two attorneys had prior to Mr. Howell's appearance at the Curry trial. During that conversation Mr. Howell's attorney had inquired as to what form of witness protection the State could offer Mr. Howell. The prosecutor had said the State could provide temporary relocation services at a hotel.

The State moved to quash that subpoena. On March 27, 2017, the court held a hearing on the State's motion. According to Mr. Howell's attorney, the limited protection offered by the State to Mr. Howell would help prove that Mr. Howell had a reasonable fear that he would suffer retaliation for testifying – which would be an element of a duress defense that he would argue as to the contempt charges. The State responded both that the proffered facts lacked the immediacy to constitute a duress defense and that the defense did not apply in the context of direct contempt prosecution. Noting that federal cases had stated that a fear of reprisal was not a "just cause" for a refusal to testify, the Circuit Court concluded that a duress defense was not applicable and granted the State's motion to quash the subpoena directed to the Curry trial prosecutor.

---

and constructive contempt is not significant for purposes of this opinion, so we generally refer simply to "contempt."

9

Prior to the trial of the contempt charges, the State filed a motion in limine to exclude evidence relating to duress on the basis that it was not a valid defense to a contempt charge. At a hearing on April 11, 2017, another judge of the Circuit Court granted that motion, in light of the previous ruling on the motion to quash the subpoena to the Curry trial prosecutor. In the course of its ruling, the court stated that there were "some real public policy concerns … if this defense were able to be raised" and suggested that it was more properly a matter to be raised in mitigation at sentencing.

After the Circuit Court ruled on the motion in limine, the parties and the Circuit Court discussed the possibility of proceeding by means of a conditional guilty plea under Maryland Rule 4-242(d), in order to preserve for appeal the legal issue of the availability of a duress defense. However, the court and parties ultimately decided to proceed instead by way of a bench trial on an agreed statement of facts.[7]

---

[7] Maryland Rule 4-242(d) allows a defendant, with the consent of the trial court and the State, to enter a conditional plea of guilty in order to preserve a legal issue for appeal when (1) the legal issue was determined adversely to the defendant by the trial court and (2) the issue would have been dispositive of the case if it were determined in the defendant's favor. In this case, the legal issue – whether a duress defense is possible in a contempt prosecution for refusal to testify – would not have been dispositive of the case, even if it had been determined in Mr. Howell's favor.

There is no specific rule concerning a bench trial on an agreed statement of facts. While encouraging parties to proceed by way of a conditional guilty plea, a Committee Note to Maryland Rule 4-242 recognizes the efficacy of the practice in particular circumstances:

It has become common in some courts for defendants to enter a plea of not guilty but, in lieu of a normal trial, to proceed either on an agreed statement of ultimate fact to be read into the record or on a statement of proffered evidence to which the defendant stipulates, the purpose being to avoid the need for the formal presentation of evidence but to allow the

*Bench Trial on Agreed Statement of Facts*

The next day, April 12, 2017, the parties returned to the Circuit Court. The prosecutor recited that the parties had agreed that the case would proceed on a "not guilty" plea and an agreed statement of facts with respect to one count of the indictment.[8] On the assumption that the court would accept that procedure and find Mr. Howell guilty of contempt, the prosecutor said that the State had agreed to recommend that Mr. Howell receive a five-year suspended sentence, with credit for the approximately nine months that Mr. Howell was electronically monitored on home detention, and three years' probation.

The parties presented the court with a written Agreed Statement of Facts, which might be more appropriately described as a stipulation of facts together with a proffer of defense evidence that allegedly would support a duress defense. The document recited the undisputed history of the events in federal and state court that led to the contempt prosecution of Mr. Howell. The State also introduced exhibits related to those proceedings, including transcripts. The Agreed Statement of Facts also contained a number of paragraphs that began with the phrase "If this case went to trial" and that summarize proffers of testimony that the defense expected to elicit at trial, if permitted to present a

---

defendant to argue the sufficiency of the agreed facts or evidence and to appeal from a judgment of conviction. That kind of procedure is permissible only if there is no material dispute in the statement of facts or evidence.

Maryland Rule 4-242(a), *Committee Note*.

[8] Mr. Howell's attorney stated that the parties agreed that, if an appellate court reversed a conviction on that count and remanded the case for trial, the trial could proceed on both counts of the indictment on remand.

duress defense. The court recognized that the Agreed Statement of Facts was, in reality,

"a mixture of both facts and proffers," and that neither party conceded that all the proffered

evidence was true or relevant.

The proffered testimony on behalf of the defense included:

- anticipated testimony by Mr. Howell that, when called to the stand on March 10 and 11, he had refused to testify out of fear for his safety.

- testimony of an individual who would testify that multiple assailants had attacked Mr. Howell outside the courtroom on March 10 and called him a "snitch" and were then escorted out of the courthouse without being arrested.

- testimony of the grand jury prosecutor who would say that in 2012 she had promised Mr. Howell advance notice as to when his identity as a witness would become public.[9]

- testimony of a correctional officer who would document an attack on Mr. Howell in the Baltimore City Central Booking and Intake Facility after his appearance in court on March 10.

- testimony of an expert witness who had studied retaliation against State witnesses in Baltimore City who would say that Baltimore City offered only temporary relocation to threatened witnesses and had not taken advantage of an opportunity to participate in the federal witness protection program.

The proffered additional testimony on behalf of the State included testimony by one

of the Curry trial prosecutors, who would have testified that, prior to the Curry trial, it

_____

[9] The Agreed Statement of Facts also recited that the grand jury prosecutor would testify that her investigation revealed that Mr. Curry was an "enforcer" for Mr. Howell's drug organization. Mr. Howell disputed the truth of that part of the proffered testimony.

became apparent that Mr. Howell would not comply with his trial subpoena, after he told his federal parole officer that he was not going to testify at the trial.

At the April 12 proceeding, Mr. Howell pled not guilty, answered a series of questions on the record similar to those typically posed at a guilty plea proceeding to demonstrate that he was acting knowingly and voluntarily, and submitted on the basis of the Agreed Statement of Facts. The Circuit Court then found him guilty of contempt. Consistent with the parties' agreement, the court sentenced Mr. Howell to five years imprisonment, suspending all but time served, and three years of supervised probation.

*The Appeal of the Contempt Conviction*

Mr. Howell appealed his conviction. As the parties and the Circuit Court had anticipated, he raised the question whether duress can be a defense to a contempt charge for a refusal to testify. The Court of Special Appeals declined to resolve that question as a general matter and held that, even if duress could be a valid defense in such a case, the defense was not generated by the evidence proffered by Mr. Howell. *Howell v. State*, 237 Md. App. 540, 559 (2018).

Mr. Howell filed a petition for a writ of *certiorari*, which we granted. 461 Md. 483 (2018).

## II

## Discussion

### A. *Standard of Review*

There are two issues before us on this appeal: (1) whether, as a matter of law, a defendant charged with contempt for a refusal to testify may raise a duress defense based

on fear of reprisal for that testimony; and, if so, (2) whether Mr. Howell presented evidence sufficient to generate a jury instruction on such a defense. Both are questions of law. *See Dykes v. State*, 319 Md. 206, 221 (1990). In considering questions of law, we apply the non-deferential *de novo* standard of review. *See* Maryland Rule 8-131(c); *Clickner v. Magothy River Ass'n Inc.*, 424 Md. 253, 266 (2012).

**B.      *Availability of a Duress Defense to a Contempt Charge for Refusal to Testify***

As outlined above, with the exception of a prosecution for intentional murder, a defendant in a criminal case may, in appropriate circumstances, seek to be relieved of criminal liability for conduct that otherwise is a crime on the basis of the common law defense of duress. For the defense to be established, there must be a "present, immediate, and impending" threat that induces a well-grounded apprehension of death or serious bodily injury and no reasonable opportunity for escape.

The State argues that a duress defense should not be available to a witness charged with contempt for a refusal to testify in a criminal case for two reasons – one doctrinal, and the other policy-based. The doctrinal argument is that a recalcitrant witness inherently can never prove two elements of the duress defense – immediacy and the lack of any reasonable opportunity to escape. The policy argument is that, even if a recalcitrant witness could satisfy every element of the defense, there should be an exception similar to that for intentional murder because it would render the criminal justice system subservient to intimidation.

14

*The Obligation to Testify*

"Every citizen … owes to his society the duty of giving testimony to aid in the enforcement of the law." *Piemonte v. United States*, 367 U.S. 556, 559 n.2 (1961). Accordingly, the power of the state to compel witness testimony is centuries-old and "at the core of the proper functioning of our criminal justice system." *State v. Rice*, 447 Md. 594, 604 (2016); *see also Kastigar v. United States*, 406 U.S. 441, 443-44 (1972); 8 John Henry Wigmore, Evidence in Trials at Common Law (4th ed. 1961) §2192 at 70.

*Witness Intimidation and Fear of Reprisal*

A government "has an obligation to protect its citizens from harm." *Piemonte*, 367 U.S. at 559 n.2. In particular, the criminal justice system has a duty to limit witness intimidation, which is "the supreme disgrace of our justice." Wigmore at 74. Professor Wigmore distinguished between intimidation inside and outside of the courthouse. As for witness intimidation outside the courthouse, that is a "far more difficult and deep-rooted" problem. *Id.* Professor Wigmore recommended that jurisdictions provide mechanisms for protecting witnesses and pass laws criminalizing witness intimidation, which Maryland has done.[10] In practice, limiting witness intimidation and protecting threatened witnesses is a

---

[10] *E.g.,* Maryland Code, Criminal Law Article ("CR"), §9-303 (prohibiting, among other things, retaliation against a witness for testimony); CR §9-305 (prohibiting, among other things, threatening or intimidating a witness); *cf.* CR §9-304(b)(1)(i) (authorizing court orders "reasonably necessary to stop or prevent ... the intimidation of a victim or witness"); *see also Tracy v. State*, 423 Md. 1 (2011) (appeal of prosecution under statutes prohibiting threats or retaliation against witnesses).

daunting task.[11]

While some courts have entertained the possibility that a witness who refuses to testify out of a fear of reprisal may satisfy the duress defense,[12] as the Court of Special Appeals accurately observed, the overwhelming majority of courts to address the issue have held that fear of reprisal does not provide a legal basis for a witness's refusal to testify.[13] 237 Md. App. at 555. In any event, neither party has cited – and we have not found – any case that held that a witness who refused to testify out of a fear of reprisal generated a duress defense.[14]

---

[11] *See* Nora V. Demleitner, *Witness Protection in Criminal Cases: Anonymity, Disguise or Other Options?*, 46 Am. J. Comp. L. 641, 659 (1998) ("Congress created the federal witness protection program in the early 1970's primarily to protect informants who testified against organized crime. This permanent identity change is also available to witnesses in state prosecutions as long as they meet certain strict standards and the local U.S. attorney recommends their acceptance into the program. Because of the high cost of the program, it has been available only to a small number of individuals, primarily major witnesses in large-scale federal prosecutions.").

[12] *See United States v. Esposito*, 834 F.2d 272, 276 (2d Cir. 1987); *United States v. Patrick*, 542 F.2d 381, 388 (7th Cir. 1976); *Budoo v. United States*, 677 A.2d 51, 54 (D.C. 1996); *State v. Pothier*, 721 P.2d 1294, 1298-99 (N.M. 1986).

[13] *See United States v. Winter*, 70 F.3d 655, 665 (1st Cir. 1995); *In re Grand Jury Proceedings*, 914 F.2d 1372, 1375 (9th Cir. 1990); *In re Grand Jury Proceedings*, 713 F.2d 616, 617 n.1 (11th Cir. 1983); *Simkin v. United States*, 715 F.2d 34, 37 (2d Cir. 1983); *United States v. Damiano*, 579 F.2d 1001, 1004 (6th Cir. 1978); *United States v. Gomez*, 553 F.2d 958, 959 (5th Cir. 1977); *United States v. Patrick*, 542 F.2d 381, 388 (7th Cir. 1976); *In re Kilgo*, 484 F.2d 1215, 1221 (4th Cir. 1973); *LaTona v. United States*, 449 F.2d 121, 122 (8th Cir. 1971); *Budoo*, 677 A.2d at 55; *State v. Jones*, 363 So. 2d 455, 457 (La. 1978); *State v. Gilbert*, 326 N.W. 2d 744, 749-50 (Wis. 1982).

[14] As the Supreme Court noted in *Piemonte*, an immunized witness like Mr. Howell has no greater claim to a duress defense than any other witness subpoenaed to testify in a

16

As noted above, an essential element of a duress defense is that the threat be "present, immediate, and impending." Each of those adjectives, according to its common dictionary definition, connotes simultaneity, or something close to it.[15] It is difficult to imagine circumstances in which a witness on the stand would face a "present, immediate, and impending" threat in a courtroom with no opportunity for escape. However, the limits of one's imagination are not the same thing as the limits of the defense.[16] In any event, for the same reasons articulated by the Court of Special Appeals we need not resolve this issue in this case.

---

criminal case. 367 U.S. at 559 n.2. The immunization order simply eliminated a valid refusal to testify based on the invocation of the privilege against *self*-incrimination.

[15] A commonly used online dictionary of the English language provides primary definitions for those terms as follows:

present: "being, existing, or occurring at this time or now"

immediate: "occurring or accomplished without a lapse of time; instant; of or relating to the present moment"

imminent: "likely to occur at any moment; impending"

www.dictionary.com.

[16] During the pretrial motions hearing, Mr. Howell's attorney suggested that a duress defense would be available in a hypothetical situation in which a man sitting in the back of the courtroom clandestinely threatened a witness on the stand with a gun and a throat-slashing motion. The Assistant State's Attorney conceded that the defense would apply in that situation. Of course, there is no contention that those hypothetical facts pertained to this case.

*C.* *Whether the Defense Proffer Generated a Duress Defense*

In a criminal jury trial, the court must, upon request, instruct the jury on "every essential question or point of law supported by the evidence." *State v. Crawford*, 308 Md. 683, 700 (1987); *see* Maryland Rule 4-325(c). If Mr. Howell's criminal contempt case had been tried before a jury and if a duress defense were available to a charge of contempt for a refusal to testify, the trial court would have had to grant a request for an instruction on duress if that instruction was generated by the evidence. As indicated above, the standard for that determination is whether there is "some evidence" of duress. *See Dykes v. State*, 319 Md. 206, 217 (1990) ("some evidence" to be understood according to its common meaning and need not satisfy burden of proof such as preponderance of evidence). Thus, the threshold question is whether the evidence proffered by Mr. Howell in the Agreed Statement of Facts satisfied that standard, which is a question of law. 319 Md. at 221.

Although the "some evidence" standard is not a high bar, we agree with the Court of Special Appeals that Mr. Howell did not satisfy it here. Mr. Howell did not proffer evidence of a threat that was "present, imminent, and impending." *McMillan v. State*, 428 Md. at 348. When Mr. Howell committed the crime of contempt, he was not under such a threat. Rather, the threat was of "future but not present personal injury." *Id.* If all of Mr. Howell's proffered evidence were true, he may indeed have feared that someone might retaliate against him in some way sometime in the future for testifying. Moreover, as noted above and as the Court of Special Appeals recognized, witness intimidation and protection are "exceptionally serious societal" issues. 237 Md. App. at 563-64. Fear of reprisal can be a valid reason to mitigate the sentence of a witness who refuses to testify and is

convicted of contempt. *Id.* at 564. Be that as it may, the common law duress defense is a poor fit for such fears because of the required element of immediacy. *See United States v. Patrick*, 542 F.2d 381, 388 (7th Cir. 1976) ("[T]he element of immediacy is of crucial importance in any attempt to raise duress as a defense to criminal charge."). The dispositive factor here is that the alleged threat against Mr. Howell was not immediate as required for the duress defense.[17]

### III

### Conclusion

For the reasons set forth above, we need not decide whether, as a matter of law, the defense of duress is unavailable to a witness charged with contempt for refusing to testify. Even assuming the defense of duress is available in that circumstance, Mr. Howell's proffered evidence failed to generate that defense in this case because the alleged threat was not "present, imminent, and impending."

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

---

[17] Thus, we need not consider whether Mr. Howell had an "affirmative duty" to seek protection. Whether Mr. Howell did or did not seek protection, the bottom line is that his proffered evidence does not demonstrate "some evidence" of an immediate threat required for a duress defense.

19